517 A.2d 1260

**In re Handwriting Exemplar of Neil CASALE, Appellant.**

Supreme Court of Pennsylvania.

Argued May 14, 1986.

Decided Nov. 17, 1986.

John P. Campana, Williamsport, for appellant.

William P. Carlucci, Kenneth A. Osokow, Asst. Dist. Attys., for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

HUTCHINSON, Justice.

By allowance, Neil Casale (appellant), appeals an order of Superior Court quashing, as interlocutory, his appeal from the order of the Court of Common Pleas of Lycoming County. In response to a motion filed *"ex proprio motu"*, *i.e.* "of his own accord", by the District

Attorney of Lycoming County, Common Pleas issued a rule to show cause and then ordered appellant to appear at the office of the District Attorney for the purpose of submitting to a handwriting exemplar examination as requested by the Commonwealth. Because appellant raises a question of the court's jurisdiction to entertain such a motion, we granted leave to appeal. We now hold that, while Common Pleas has jurisdiction to determine controversies of the general class to which this case belongs, it lacks the power to act until that jurisdiction has been invoked in accordance with the pertinent rules of criminal procedure. *See* Pa.R.Crim.P. 101.

During the course of a police investigation into a burglary and robbery committed within the City of Williamsport in Lycoming County, a juvenile who participated in the crimes testified, both at his own hearing and at the trial of his brother, that Neil Casale, owner of the Taproom Tavern in Williamsport, had arranged for the burglary and robbery. The juvenile testified that appellant had written the address of the place to be entered on a piece of paper, which was subsequently discovered on those premises by the police. Based on this testimony, the police continued to investigate the robbery and the District Attorney for Lycoming County served a "Motion to Compel Handwriting Exemplar" on appellant in order to compare his handwriting with the handwriting found at the victim's residence.

Relying on the case of *Commonwealth v. Polak,* 438 Pa. 67, 263 A.2d 354 (1970), appellant argues, by analogy to subpoenas, that a prerequisite to the issuance of an order to produce a handwriting exemplar is a pre-existing matter or cause pending before the court. *Polak* addressed that issue under provisions of the Act of June 16, 1836, P.L. 784. That statute has since been repealed and replaced with sections 912 and 931 of the Judicial Code, which largely refer matters of criminal procedure to our constitutional rule-making power. Act of July 9, 1976, P.L. 586, No. 142, effective 60 days from the date of final enactment of the Act of April 28, 1978, P.L. 202, No. 53. Thus it appears appropriate for us to set forth the present requirements of

the Code and our rules of procedure concerning the questions of jurisdiction and judicial power which appellant has raised.

At the outset, we note that the Pennsylvania Constitution provides:

> Section 5. There shall be one court of common pleas for each judicial district . . .
>
> (b) having unlimited original jurisdiction in all cases except as may otherwise be provided by law.

Pa. Const. art. V, § 5(b). Though modified, this language is reiterated in the Judicial Code, *supra:*

> (a) General rule.—Except where exclusive original jurisdiction of an action or proceeding is by statute or by general rule adopted pursuant to section 503 (relating to reassignment of matters) vested in another court of this Commonwealth, the courts of common pleas shall have unlimited original jurisdiction of all actions and proceedings, including all actions and proceedings heretofore cognizable by law or usage in the courts of common pleas.
>
> (b) Concurrent and exclusive jurisdiction.—The jurisdiction of the courts of common pleas under this section shall be exclusive except with respect to actions and proceedings concurrent jurisdiction of which is by statute or by general rule adopted pursuant to section 503 vested in another court of this Commonwealth or in the district justices.

42 Pa.C.S. § 931.

> Every court of common pleas shall have power to issue, under its judicial seal, every lawful writ and process to or to be served or enforced by system and related personnel as such courts have been heretofore authorized by law or usage to issue. Every judge of a court of common pleas shall have all the powers of a judge or district justice of the minor judiciary.

42 Pa.C.S. § 912. The Judicial Code, however, does not define the term "jurisdiction", leaving us to determine its meaning from our common law history and cases.

In *Commonwealth v. Little*, 455 Pa. 163, 314 A.2d 270 (1974), we discussed this question at some length, noting that:

> [J]urisdiction is of two sorts: jurisdiction of the subject matter in the case, and jurisdiction of the parties involved. An objection to lack of subject-matter jurisdiction can never be waived; it may be raised at any stage in the proceedings by the parties or by a court on its own motion. *Daly v. School District of Darby Township*, 434 Pa. 286, 252 A.2d 638 (1969), 21 Am.Jur.2d, Criminal Law § 379 (1968). . . . Jurisdiction of the person, on the other hand, may be created by the consent of a party, who thereby waives any objection to defects in the process by which he is brought before the court. *Crown Construction v. Newfoundland American Insurance Co.*, 429 Pa. 119, 239 A.2d 452 (1968); *Neifeld v. Steinberg*, 438 F.2d 423 (3d Cir.1971); 21 Am.Jur.2d, Criminal Law § 379 (1968).

*Id.*, 455 Pa. at 167–168, 314 A.2d at 272. As in *Little*, there is here no question that the Lycoming Court of Common Pleas has subject-matter jurisdiction over criminal proceedings. However:

> [T]o invoke this jurisdiction, something more is required; it is necessary that the Commonwealth confront the defendant with a formal and specific accusation of the crimes charged. This accusation enables the defendant to prepare any defenses available to him, and to protect himself against further prosecution for the same cause; it also enables the trial court to pass on the sufficiency of the facts alleged in the indictment or information to support a conviction. The right to formal notice of charges, guaranteed by the Sixth Amendment to the Federal Constitution and by Article I, Section 9 of the Pennsylvania Constitution, is so basic to the fairness of subsequent proceedings that it cannot be waived even if the defendant voluntarily submits to the jurisdiction of the court. *Albrecht v. United States*, 273 U.S. 1, 71

L.Ed. 505, 47 S.Ct. 250 (1927); *Commonwealth ex rel. Fagan v. Francies,* 53 Pa.Superior Ct. 278 (1913).

*Little,* 455 Pa. at 168–169, 314 A.2d at 272–273.

Moreover, unlike *Little,* appellant here has not waived the formal institution of proceedings against him. Thus the Lycoming Court of Common Pleas has not obtained jurisdiction of his person in any of the ways permitted by our Rules of Criminal Procedure, which provide:

Criminal proceedings in court cases shall be instituted by:

1. filing a written complaint; or

2. an arrest without a warrant when the offense is a felony or misdemeanor committed in the presence of the police officer making the arrest; or

3. an arrest without a warrant upon probable cause when the offense is a felony; or

4. an arrest without a warrant upon probable cause when the offense is a misdemeanor not committed in the presence of the police officer making the arrest, when such arrest without a warrant is specifically authorized by statute.

Pa.R.Crim.P. 101. To this the *Comment* adds:

There are only a few exceptions to this Rule regarding the instituting of criminal proceedings in court cases. Such proceedings may also be instituted by presentment of an indicting grand jury based on the personal knowledge of the jurors without any bill having been laid before them. See, *e.g., McNair's Petition,* 324 Pa. 48, 187 A. 498 (1936). When great haste is necessary, or for other good cause a preliminary hearing cannot be held, the attorney for the Commonwealth may with leave of court submit a bill of indictment directly to an indicting grand jury, or, in counties which have abolished the indicting grand jury, the attorney for the Commonwealth may with leave of court submit an information directly to the court of common pleas. See Rules 224 and 231.

It is quite evident that this rule does not authorize the institution of criminal proceedings by the filing and service of a "motion", neither does it authorize the use of the

equitable procedure of petition and rule to show cause, which is the way Common Pleas has here treated the Commonwealth's motion in its attempt to establish jurisdiction over the person of appellant. Both "motions" and "petitions" are ancillary, not original, process. Even on the civil side of our courts, an action brought by petition and rule, neither authorized by statute [1] nor auxiliary to jurisdiction already obtained and not designed to correct the court's own records, is a nullity and confers no jurisdiction on the court. *Commonwealth v. Dauphin County,* 354 Pa. 556, 47 A.2d 807 (1946); *Re Correction of Official Records with Civil Action,* 44 Pa.Commonwealth Ct. 511, 404 A.2d 741 (1979). *See also Wm. Garlick & Sons, Inc. v. Lambert,* 446 Pa. 323, 287 A.2d 143 (1972).

■ Appellee's attempt to analogize his motion to an application for a search warrant under Chapter 2000 of the Rules of Criminal Procedure is fruitless. While the rules authorize a law enforcement officer [2] to serve a search warrant, such a warrant may only be issued to search for and seize:

(a) contraband, the fruits of a crime, or things otherwise criminally possessed; or

(b) property which is or has been used as the means of committing a criminal offense; or

(c) property which constitutes evidence of the commission of a criminal offense.

Pa.R.Crim.P. 2002. Appellee's motion was an attempt to force appellant to create the evidence of a crime without providing appellant with the minimal notice of "the nature and cause of the accusation against him" required both by Article I, Section 9 of the Constitution of Pennsylvania and

1. See *Pennsylvania Crime Commission Petitions,* 446 Pa. 152, 285 A.2d 494 (1971), in which the authority to proceed by petition and rule to invoke the aid of the court in the enforcement of the Commission's subpoena power is found in the general language of the Act of July 31, 1968, P.L. 757, establishing the original Pennsylvania Crime Commission.

2. A law enforcement officer is defined as "any person who is by law given the power to enforce the law when acting within the scope of that person's employment." Pa.R.Crim.P. 3(*l*).

by the Sixth Amendment to the United States Constitution. A search warrant serves to authorize the seizure of identifiable and existing property. It is not available as a general investigatory tool to be used in place of a grand jury.

We note that the opinions of the federal courts, which have examined the authority of United States attorneys to demand demonstrations of physical characteristics in aid of criminal investigations, also require the issuing of a warrant or the authority of the grand jury itself.

In *Gilbert v. California,* 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), four members of the United States Supreme Court (Warren, White, Harlan and Stewart) joined Justice Brennan in holding that an accused could be required to provide handwriting exemplars without violating either his privilege against self-incrimination or his right to counsel.[3] After arrest in Philadelphia, the defendant in *Gilbert* was questioned by an FBI agent concerning the murder of a policeman in the course of a California bank robbery. Defendant declined to discuss the California case in the absence of counsel, but responded to other inquiries concerning some Philadelphia robberies, and gave the interrogating agent handwriting exemplars which were subsequently admitted into evidence at his California trial. The court in *Gilbert* concluded that the taking of exemplars was not a "critical stage" of the criminal proceedings entitling petitioner to counsel. "Putting aside the fact that the exemplars were taken before the indictment and appointment of counsel, there is minimal risk that the absence of counsel might derogate from his right to a fair trial." *Gilbert,* 388 U.S. at 267, 87 S.Ct. at 1653 (citing *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967)).

Subsequently, in *United States v. Mara,* 410 U.S. 19, 93 S.Ct. 774, 35 L.Ed.2d 99 (1973), the Court, speaking through Justice Stewart, upheld the authority of a grand jury to

---

**3.** Judgment and conviction were vacated and the case remanded to the California Supreme Court to determine whether the absence of counsel for the accused at the critical lineup was "harmless beyond a reasonable doubt." 388 U.S. at 274, 87 S.Ct. at 1957.

compel production of a physical characteristic, such as a handwriting exemplar, on the ground that "[h]andwriting, like speech, is repeatedly shown to the public, and there is no more expectation of privacy in the physical characteristics of a person's script than there is in the tone of his voice." *Id.* at 21, 93 S.Ct. at 776. *See also United States v. Dionisio,* 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973).

In the wake of *Mara* and *Dionisio, supra,* federal district courts have upheld grand jury directives to provide non-testimonial evidence. *See, e.g., United States v. Balliro,* 558 F.2d 1177 (5th Cir.1977) and *United States v. Shaw,* 555 F.2d 1295 (5th Cir.1977). However, the federal courts have consistently rejected the notion that a United States attorney has authority to demand a hand-writing exemplar without a directive from a grand jury. In *United States v. O'Kane,* 439 F.Supp. 211 (S.D.Florida 1977), the court concluded:

> [I]t is not sufficient that an individual be subpoenaed before the grand jury for the U.S. Attorney's office to be empowered to obtain exemplars.... Without such a directive, ... the district court does not have jurisdiction to compel the evidence sought.

*Id.* at 215. *See also In re Melvin,* 546 F.2d 1 (1st Cir.1976) (U.S. District Attorney sought court order for a lineup, without prior showing of grand jury directive).

Most recently the United States Supreme Court has reemphasized its insistence on the need for a warrant, as well as probable cause to arrest, to justify the transportation of a suspect to the station house for fingerprinting, or any other detention which exceeds the limits authorized in *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). *Hayes v. Florida,* 470 U.S. 811, 105 S.Ct. 1643, 84 L.Ed.2d 705 (1985). *See also Dunaway v. New York,* 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979), *Davis v. Mississippi,* 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969). In *Hayes,* the police, without obtaining an arrest warrant, asked the defendant to accompany them to the police station so that he could be fingerprinted, threatening to arrest him if he declined. Once his fingerprints were matched,

they arrested him. The Supreme Court has now held those fingerprints to be inadmissible as the fruit of a coercive detention. *Hayes,* 105 S.Ct. at 1645.

Thus, both federal and Pennsylvania cases require either the institution of regular criminal proceedings before an order for a handwriting exemplar may issue or the authority and control of an investigating grand jury if a district attorney undertakes to obtain such evidence by legal compulsion before filing a complaint.

The possibilities for abuse in the procedure employed by Common Pleas have long been recognized by this Court and we reiterate our condemnation thereof. Appellee may properly invoke the aid of Common Pleas in obtaining a handwriting exemplar after he has formally proceeded against appellant in accordance with our Rules of Criminal Procedure. Accordingly, the orders of Superior Court and the Lycoming County Court of Common Pleas are reversed and the latter's rule to show cause is discharged.

### JUDGMENT

ON CONSIDERATION WHEREOF, it is now hereby ordered and adjudged by this Court that the orders of Superior Court and the Lycoming County Court of Common Pleas are reversed and the latter's rule to show cause is discharged.